```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID A. GRIMME,                      :
          Plaintiff                   :
                                      :  Civil Action No. 03-182J
JOANNE B. BARNHART, COMMISSIONER      :
OF SOCIAL SECURITY,                   :
          Defendant                   :
```

**MEMORANDUM**

David Grimme appeals for the second time from the unfavorable portion of a favorable decision of the Commissioner of Social Security granting his application for disability benefits under Title II of the Social Security Act. 42 U.S.C.§§ 401-33. Grimme applied for benefits in September 1995, alleging that he had become disabled on March 14, 1993, due to the combined effects of post-traumatic stress disorder (PTSD) and a seizure disorder. ALJ Melvin Benitz held a first evidentiary hearing in March 1997, and found Grimme disabled as of June 1, 1996. After an unsuccessful request for review to the Appeals Council terminated in 2000, Tr. 4-5, Grimme appealed the unfavorable portion of the decision to this court, <u>Grimme v. Commissioner</u>, C.A. No. 00-126J. Judge Smith vacated the unfavorable portion of the Commissioner's decision in an opinion issued May 31, 2001, Tr. 356-74. The reasoning of the opinion was that substantial evidence supported the finding that Grimme was not disabled up to March 8, 1994, but the text of the remand order was that the Commissioner should reconsider whether Grimme was disabled for the period March 1993 through May 1996. <u>id.</u>

On remand, ALJ Benitz held a second evidentiary hearing on November 8, 2001. On February 20, 2002, the ALJ found Grimme more limited in his residual functional capacity, but still not disabled before June 1, 1996. After another unsuccessful request for review by the Appeals Council, Tr. 309-10, Grimme again sought judicial review.

Judicial review of what is deemed to be the Commissioner's decision is limited to the question whether that decision is supported by substantial evidence, 42 U.S.C.§ 405(g), that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also Schaudeck v. Commissioner, 181 F.3d 429, 431 (3d Cir.1999). In the circumstances of a favorable decision, the question is whether substantial evidence supports the onset date of disability chosen by the Commissioner.

Although substantial evidence review is deferential, my responsibility is to canvass the record as a whole, not simply to examine the record for those pieces of evidence relied upon by the ALJ. See Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190 (3d Cir.1986). I have therefore read the entire record. Because substantial evidence supports the ALJ's findings, the plaintiff's motion for summary judgment, docket no. 6, is denied, the defendant's motion for summary judgment, docket no. 8, is granted, and the decision of the Commissioner is affirmed.

The ALJ evaluating Grimme's claim for benefits used the five-step sequential analysis each time. It is set forth at 20 C.F.R.§ 404.1520. And see Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The first time through, the ALJ analyzed Grimme's claim as follows: (1) Grimme was not working and had not worked at substantial gainful employment since March 1993; (2) he has severe impairments, those being PTSD and seizure disorder; (3) those impairments do not meet the disability listings of themselves; and (4) Grimme could not return to his past relevant work as a truck driver, but could return to his past work as a automobile mechanic. Tr. 14-25.

In the analysis at step four, the ALJ must determine whether a claimant's residual functional capacity enables him to perform his past relevant work. This step involves three substeps: (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work. Burnett v. Commissioner, 220 F.3d 112, 120 (3d Cir.2000). The ALJ found that Grimme could work as a mechanic primarily because Grimme had been seizure free for six months at a time, Tr. 18, 20, Grimme's PTSD was not so debilitating that he needed to be medicated for it, Tr. 19,

3

his complaints of headaches (which the ALJ described as "complaints of pain," Tr. 23) were not fully corroborated by the record and did not prevent Grimme from working sporadically as a mechanic between 1993 and 1996. Tr. 21.

On remand, the ALJ received additional evidence as to the 1993-96 time period, namely, additional testimony from Grimme's Veteran's Administration social worker/counselor, John Grove, Tr. 334-45, treatment records from the Veteran's Administration hospital in Altoona for an admission between July 21 and 28, 1993, Tr. 287-308 (submitted on the first request for review to the Appeals Council), Tr. 381-91 (submitted after the second hearing), and additional testimony from a vocational expert, Tr. 345-50, Tr. 397-99. Mr Grove's testimony, in sum, was that he believed Grimme's problems were severe enough to need medication well before he first saw the VA for any psychiatric assistance in March 1994, and probably had been disabling for an unspecified number of years prior to that. Grove explained that the reason that Grimme was not prescribed psychotropic medication until mid-1996 was Grimme's desire not to take additional medicine.

Based on the additional evidence, on remand the ALJ analyzed Grimme's residual functional capacity as more limited. Once again the ALJ found, (1) Grimme was not working and had not worked since May 1993; (2) he has severe impairments, those being PTSD and seizure disorder; (3) those impairments do not meet the

4

disability listings of themselves; but at step four the ALJ now found that (4) Grimme could not return to either of his past relevant jobs. Tr. 328.

The burden therefore shifted to the Commissioner to show that at the final step: (5) Grimme retained, until the date of his disability, the residual functional capacity to do the work necessary in jobs existing in significant numbers in the national economy. See Jesurum v. Secretary, HHS, 48 F.3d 114, 117 (3d Cir.1995). The ALJ first found that Grimme retained the ability to perform the exertional demands of light work. There is no serious dispute as to that finding. Light work requires lifting objects up to only 20 pounds, with frequent lifting of objects up to 10 pounds, or a "good deal" of walking, standing, or operating controls. 20 C.F.R.§ 404.1567. Between 1993 and 1996, Grimme was between 40 and 43 years old, a "younger individual." 20 C.F.R.§§ 404.1563. The ALJ found that Grimme's nonexertional impairments (the seizure disorder and PTSD, coupled with the side effects of medications taken to treat them) precluded him from working around heights or moving machinery, or from jobs requiring frequent interactions with the public or supervisors, or the ability to tolerate stress. Tr. 328.

Based on these limitations, the ALJ asked a vocational expert whether there were jobs in the national economy that an individual with such limitations could do. The vocational expert

5

gave four examples of light jobs employing more than a quarter million persons and four sedentary jobs employing about 200,000 persons that would be consistent with the nonexertional limitations found by the ALJ.

In the first judicial review of Grimme's claim, Judge Smith stated, Tr. 373, that there was no evidence that Grimme's conditions were disabling before March 1994, when Grimme first saw Sreedevi Komarneni, M.D., a psychiatrist. Although there are records indicating a seizure disorder before that time, and although Grove is undoubtedly correct that Grimme's PTSD condition did not spring into being full blown in 1996, the existence or diagnosis of a condition or conditions is not equivalent to finding of a disability: the functional limitations resulting from that condition or combination of conditions must be severe enough to prevent or be expected to prevent substantial gainful activity.

Grimme's seizure history is documented in the records of the hospital admission in July 1993, which were available to the ALJ at the first hearing, Tr. 207-10. Also available were the treatment records of Raju Katari, M.D., who prescribed anti-seizure medication for Grimme, and consistently described Grimme's seizure symptoms as controlled with Dilantin. Tr. 211 (October 1993) 215 (March 1994) 217 (April 1994), 234 (December 1994 "no seizures for 9 months"), Tr. 271 (May 1996 "seizure free for 6 months"). The only seizure episodes prior to the onset date accepted by the ALJ were apparently

6

related to Grimme's PTSD. See Tr. 274, relating episodes in July 1995, October 1995, and one which can be dated February, 1996, which is not a seizure and can more accurately be described as a panic attack. See Tr. 268.

Regarding the PTSD, in March 1994, Grimme was referred to Sreedevi Komarneni, M.D., for a psychiatric evaluation because he was experiencing stress and weight loss after a leg injury left Grimme's leg in a cast. Tr. 214-16. Komarneni recommended counseling, which Grove began in April 1994. Tr. 219-20. The 81 recorded weekly counseling sessions with Grove disclosed a number of problems, including, in November 1995, Tr. 258, the cause of Grimme's PTSD. However, in contrast to Grove's testimony before the ALJ as to the intractability of Grimme's condition from the early 1990s, Grove's office notes through most of 1995 are positive: Grove indicates that Grimme had "considerable" insight into his problems (April 19) and "may go to work again as a mechanic until he can get himself financially squared away enough to drive truck again" (April 26), his "psychological stressors have been relieved" by receipt of his income tax refund (May 3) and Grimme was "doing fine working as mechanic" (May 24), showed "good progress in discrimination" by ending a relationship with a woman Grove perceived as unhealthy (June 14), and was "functioning better occupationally and socially than ever before" (June 21). In August Grimme was described as "working full time" (August 2) doing well in his interpersonal

7

relationships (August 17 and September 27). In September 1995, Komarneni wrote that Grimme "reports doing well on Ativan." Tr. 251.

Most of the stress reported by Grove relates to Grimme's anxiety about the consequences of having no income on his ability to pay his utility bills and other living expenses. In late 1995, the tone of Grove's office notes changed, and Grove began noting increased sleep disorders and panic attacks by Grimme, despite the p.r.n. prescription of Ativan by Katari in December 1994, Tr. 234. In September 1995, Grimme's Ativan dose was increased to once per day. Tr. 251. In November 1995, as noted above, Grimme had an insight into the cause of his PTSD, but even into early 1996 the primary stressor described by Grove is Grimme's poor financial situation. See e.g. Tr. 268. Despite all this, Grimme was still able to work at least part time and in March 1996, Grove was reporting that Grimme was "doing well" and planned to increase his number of hours worked. Tr. 269.

The other pre-1996 evidence available to the ALJ was the consultative evaluation by Doctor Muhlfelder in January, 1996, Tr. 259-65, which the ALJ interpreted as giving in part a useable opinion as to Grimme's mental state, see e.g. Tr. 265 ("Client is able to sustain a simple routine;" "Client is able to make decisions,") but the majority of which consists of Muhlfelder refraining from giving an opinion and simply repeating Grimme's

8

self-assessment. See e.g. 264 (note repeated use of "client says"). To the extent that it expresses an expert opinion as opposed to an echo of Grimme's own statements, Muhlfelder's report supports an evaluation that Grimme could at least perform simple low stress tasks.

The ALJ found on remand that Grimme's PTSD and seizure disorder precluded return to Grimme's previous work, but that he could still do some light and sedentary jobs. In light of Grimme's own conduct as recorded by Grove that showed through much of 1995 Grime could work at his job as a mechanic job (which according to the vocational expert was more demanding than the sedentary jobs described by the vocational expert), that conclusion was supported by substantial evidence.

On remand, the ALJ really had no new medical testimony, but only the recollection of a nonmedical witness, Grove, as to the psychiatric state of a client almost eight years earlier, a recollection that was in significant respects inconsistent with his contemporaneous notes. Grove was not even clear on the specific date of the stressors he claimed at the second ALJ hearing to have triggered Grimme's disability. See Tr. 342-43. The ALJ did not err in discounting his testimony.

To establish an onset of disability date is relatively easy in the case of a traumatic injury: the date of the injury is an obvious reference point for any diminution in a person's abilities.

9

It is more difficult in a case involving a progressively worsening condition to draw a precise line between the day on which a person was able to perform particular work and the next day, on which the person was unable to do so. It is most difficult to fix the point at which a person who suffers from a chronic condition becomes unable to perform tasks that were formerly within reach but which are less demanding than the tasks the person was actually doing. As the task of evaluation becomes more difficult, the importance of supportive records and reasoned explanation increases. Here, there are no new supporting records and certainly no new opinions by any medical service provider that demonstrate any familiarity with the Commissioner's standards for disability or which provide an explanation for an onset date of disability earlier than June 1996. The ALJ, in both reviews, had the letter opinion signed by Komarneni and Grove dated May 2, 1996. Tr. 274-75. That opinion does not put a precise date on Grimme's onset date but implies that Grimme's seizure and panic episodes in July 1995 show disability as of mid-1995. The ALJ is required to defer, in the absence of contrary medical evidence, to a treating physician's "well-supported" medical opinions, Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir.2001), but since Komarneni's opinion of May 1996 is contradicted by her office notes and Grove's office notes, the ALJ was not in error to reject it to the extent it claimed Grimme was totally disabled. At least, the ALJ could properly harmonize Komarneni's opinion with

Muhlfelder's opinion that Grimme could perform simple jobs until Grimme's onset date of June 1, 1996.

DATE: 23 September 2005

Keith A. Pesto,
United States Magistrate Judge

cc:
James Pappas, Esquire
South Street Station
709 Franklin Street
Johnstown, PA 15901

John J. Valkovci, Esquire
224 Penn Traffic Building
319 Washington Street
Johnstown, PA 15901